RENDERED: MAY 7, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2018-CA-1906-MR
AND
NO. 2019-CA-0214-MR


CHRISTOPHER J. WOLF          APPELLANT/CROSS-APPELLEE


APPEAL AND CROSS-APPEAL FROM MADISON CIRCUIT COURT
v.          HONORABLE JEFF MOSS, SPECIAL JUDGE
ACTION NO. 15-CI-50369


MELLISA N. HAMILTON          APPELLEE/CROSS-APPELLANT


OPINION
AFFIRMING IN PART, REVERSING IN PART,
AND REMANDING ON DIRECT APPEAL;
AND AFFIRMING ON CROSS-APPEAL

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; ACREE AND LAMBERT, JUDGES.

LAMBERT, JUDGE: Christopher J. Wolf appeals from the Madison Circuit

Court's decree of dissolution, entered on December 18, 2018, arguing that its

failure to restore nonmarital property was erroneous. Mellisa N. Hamilton cross-

appeals, asserting that the circuit court erred in finding the parties' settlement agreement to be unconscionable. We affirm in part, reverse in part, and remand on direct appeal. We affirm on cross-appeal.

The parties met in July 2009. Wolf, who was married to someone else at the time, proposed to Hamilton the following November. They were married in Madison County, Kentucky, on March 4, 2011. It was Wolf's second marriage and Hamilton's fifth. Each of them had children from prior relationships, but no children were born of their marriage to each other.

Wolf and Hamilton separated on August 3, 2015. Hamilton filed for dissolution of marriage, and her counsel prepared a property settlement agreement within ten days of the parties' separation. Wolf, who was not represented by counsel, signed the agreement on August 14, 2015. The agreement divided the parties' assets, pets, business interests, retirement accounts, and real property. Debts were assigned. The parties waived the family court rules' requirements regarding the exchange of preliminary verified disclosure forms and a formal hearing.

Wolf had second thoughts about the agreement. He hired counsel, and he filed a motion to set the agreement aside as unconscionable and adjudicate the issues of allocation of the parties' assets and debts. An initial hearing was held on October 1, 2015, and a non-dissipation order was entered in February 2016.

The Madison Circuit Court judge assigned to the case retired in August 2016, and he was succeeded by his wife. Wolf filed a motion for summary judgment regarding his motion to set aside the settlement agreement, to which Hamilton responded. After holding a hearing on the matter, the circuit court ruled the separation agreement unconscionable and ordered the parties to "schedule a formal mediation as soon as possible to renegotiate another settlement agreement."

The parties were unable to renegotiate a second settlement agreement. In late September 2017, the judge disqualified herself (as did the other circuit court judge in Madison County), and a special judge was appointed to preside over the litigation. The final hearing was held over a two-day period in September 2018. The circuit court entered its findings of fact, conclusions of law, and decree of dissolution on December 13, 2018. Wolf appeals, and Hamilton cross-appeals.

We first consider Hamilton's argument on cross-appeal, namely, that the circuit court erred in finding the separation agreement unconscionable. We use the following guidelines in reviewing this issue, beginning with Kentucky Revised Statute (KRS) 403.180(2), which provides, in pertinent part:

> In a proceeding for dissolution of marriage or for legal separation, the terms of the separation agreement . . . are binding upon the court unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties, on their own motion or on request of the court, that the separation agreement is unconscionable.

"[T]he trial court was obligated to follow the case law of this state and enforce the contract unless it was found to be 'manifestly unfair or inequitable.'" *Cameron v. Cameron*, 265 S.W.3d 797, 801 (Ky. 2008) (citing *Burke v. Sexton*, 814 S.W.2d 290, 292 (Ky. App. 1991)). *See also Combs v. Combs*, 787 S.W.2d 260, 261 (Ky. 1990).

> The family court is in the best position to weigh the evidence and determine if a separation agreement is unconscionable or if it resulted from duress, undue influence, or overreaching. *Shraberg v. Shraberg*, 939 S.W.2d 330, 333 (Ky. 1997). Regarding such determinations, we defer to the family court's broad discretion, and are prohibited from disturbing its decision absent an abuse of its discretion. *See id.*; *Peterson* [*v. Peterson*], 583 S.W.2d [707,] 712 [(Ky. App. 1979)].

*Andrews v. Andrews*, 611 S.W.3d 271, 275 (Ky. App. 2020) (citing *Mays v. Mays*, 541 S.W.3d 516, 524 (Ky. App. 2018), and *Ford v. Ford*, 578 S.W.3d 356 (Ky. App. 2019)). "[A] party challenging an agreement as unconscionable should have a relatively high burden of proof." *Peterson*, 583 S.W.2d at 712.

In finding the agreement to be unconscionable, the sitting family court judge held that "sufficient detail must be provided in the parties' Separation Agreement for the Court to determine whether or not the Agreement meets the statutory requirements." It stated:

> 2. In the case at hand, the agreement reached between the parties involved a significant amount of money and property. This Court believes that much of the problems being addressed now would have been

-4-

prevented if [Hamilton] had been forthcoming with her attorney as to the circumstances surrounding the divisions of assets and the proposed assignment of [Wolf's] nonmarital property to [Hamilton]. Nevertheless, a Separation Agreement was drafted by [Hamilton's] counsel which lacked sufficient detail regarding same, and said Agreement was signed by [Wolf] who was not represented by counsel. Verified Factual Disclosure statements were not completed by the parties prior to [Wolf's] Motion to Set the Separation Agreement aside, making it impossible for the Court to even determine on its own whether or not there was a just division of property and no Agreed Order was entered into by the parties waiving the filing of disclosures.

3. Due to the lack of detail in the Separation Agreement, the Court required testimony to ascertain whether said Agreement was manifestly unfair. The testimony confirmed the agreement was more than just a bad deal on the part of [Wolf]. It was clear from his testimony, [Wolf] lacked the sophistication necessary to know whether or not he was making a fair deal. Although[] KRS 403.180 encourages parties to enter into comprehensive agreements, the Court noted in *Shraberg v. Shraberg*, 939 S.W.2d 330[, 333] (Ky. 1997), that[,] "in recognition of the intimate nature of the relationship and the ability of a strong and persistent spouse to overwhelm the other spouse, the statute broadly directs the trial court to review the agreement for unconscionability. In effect, the law has established a measure of protection for parties from their own irresponsible agreements."

The circuit court made no specific finding of "fraud, undue influence, overreaching or manifest unfairness." *Pursley v. Pursley*, 144 S.W.3d 820, 826 (Ky. 2004) (footnote omitted). Even had such a finding been made, it would not have been supported by substantial evidence: Wolf's testimony at the hearing indicated that

-5-

he signed the settlement agreement in order to "free up some money" and "ensure that he would get half." He conceded that he read the agreement before signing it, and he admitted waiving the formal hearing and financial disclosures. Wolf acknowledged that his monetary settlement for a premarital work-related injury was absorbed into the couple's joint accounts, business ventures, and lifestyle spending, and that he allowed Hamilton to manage their funds. He testified that "she's better at setting things up," and he was "used to her taking care of business." Wolf also expressed his desire to avoid attorney fees. Although he claimed that Hamilton "had control of all the money," Wolf also stated that, during the marriage, he preferred to keep it that way.

At first blush, receiving "half" does not appear to be a bad bargain, much less indicative of fraud or duress. *Pursley*, *supra*. However, the circuit court's finding of unconscionability was based on the lack of detail insofar as division of the parties' numerous assets and debts. Furthermore, the settlement agreement failed to mention Wolf's nonmarital worker's compensation settlement (for the injury he suffered prior to the marriage). The agreement merely stated: "Each party acknowledges that all non-marital property has been restored to the party entitled hereto," and "there is no other non-marital property to be restored[.]" Given the size of Wolf's award ($781,200.00), the utter lack of mention of it in the

separation agreement was a red flag that there was at least the possibility of overreaching or manifest unfairness. *Id.*

We review the circuit court's finding of unconscionability for abuse of discretion. "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000) (citing *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999)). The circuit court did not abuse its discretion in finding the separation agreement unconscionable, and we thus affirm that decision.

We next address Wolf's arguments on direct appeal, namely, that the circuit court erred in its rulings regarding disposition of assets and debts. KRS 402.190. We begin by enunciating our standard of review. Kentucky Rules of Civil Procedure (CR) 52.01 provides the general framework for the circuit (family) court as well as review in the Court of Appeals:

> In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specifically and state separately its conclusions of law thereon and render an appropriate judgment[.] . . . Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

*See Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) (footnote omitted) (an appellate court may set aside a lower court's findings made pursuant to CR 52.01

-7-

"only if those findings are clearly erroneous."). The *Asente* Court went on to

address substantial evidence:

> "[S]ubstantial evidence" is "[e]vidence that a reasonable mind would accept as adequate to support a conclusion" and evidence that, when "taken alone or in the light of all the evidence, . . . has sufficient probative value to induce conviction in the minds of reasonable men." Regardless of conflicting evidence, the weight of the evidence, or the fact that the reviewing court would have reached a contrary finding, "due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses" because judging the credibility of witnesses and weighing evidence are tasks within the exclusive province of the trial court. Thus, "[m]ere doubt as to the correctness of [a] finding [will] not justify [its] reversal," and appellate courts should not disturb trial court findings that are supported by substantial evidence.

*Id.* at 354 (footnotes omitted). *See also McVicker v. McVicker*, 461 S.W.3d 404,

415 (Ky. App. 2015).

In *Young v. Young*, 314 S.W.3d 306, 308 (Ky. App. 2010), this Court

specifically addressed the standard of review for the classification of property:

> A trial court's ruling regarding the classification of marital property is reviewed *de novo* as the resolution of such issues is a matter of law. *Heskett v. Heskett*, 245 S.W.3d 222, 226 (Ky. App. 2008). We review a trial court's determinations of value and division of marital assets for abuse of discretion. *Armstrong v. Armstrong*, 34 S.W.3d 83, 87 (Ky. App. 2000) (quoting *Duncan v. Duncan*, 724 S.W.2d 231, 234-35 (Ky. App. 1987)).

KRS 403.190 provides for the assignment and division of property and provides in

relevant part as follows:

(1) In a proceeding for dissolution of the marriage or for legal separation, or in a proceeding for disposition of property following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse or lacked jurisdiction to dispose of the property, the court shall assign each spouse's property to him. It also shall divide the marital property without regard to marital misconduct in just proportions considering all relevant factors including:

> (a) Contribution of each spouse to acquisition of the marital property, including contribution of a spouse as homemaker;
>
> (b) Value of the property set apart to each spouse;
>
> (c) Duration of the marriage; and
>
> (d) Economic circumstances of each spouse when the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children.

KRS 403.190(2)(a) defines "marital property" as "all property acquired by either spouse subsequent to the marriage except . . . [p]roperty acquired by gift, bequest, devise, or descent during the marriage and the income derived therefrom unless there are significant activities of either spouse which contributed to the increase in value of said property and the income earned therefrom[.]"

Here there is no dispute that Wolf's worker's compensation award was his nonmarital property. It was payment for an injury that occurred prior to

the parties' marriage. KRS 403.190(2)(a). But Wolf deposited the proceeds into a joint account, and the subsequent reduction in the balance of that account was attributable to both parties, not just Hamilton (as Wolf would have this Court believe).

The couple purchased an expensive home (complete with new furnishings), as well as adapted a newly extravagant lifestyle of travel, dining out, vehicle replacement, and (for Hamilton) cosmetic dentistry and surgery. The parties also entered into a joint venture of flipping properties in Florida. Hamilton, who was able to trace over $220,000.00 of her own funds as deposits into another account, claims these were also monies accessed for those investments.

"When the original property claimed to be nonmarital is no longer owned, the nonmarital claimant must trace the previously owned property into a presently owned specific asset." *Sexton v. Sexton*, 125 S.W.3d 258, 266 (Ky. 2004) (citations omitted). Nonmarital funds which have been commingled with marital funds may be traced by showing that the balance of the commingled account "was never reduced below the amount of the nonmarital funds[.]" *Allen v. Allen*, 584 S.W.2d 599, 600 (Ky. App. 1979), *overruled on other grounds by Chenault v. Chenault*, 799 S.W.2d 575, 579 (Ky. 1990) ("Accordingly, we shall adhere to the general requirement that nonmarital assets be traced into assets owned at the time of dissolution, but relax some of the draconian requirements

-10-

heretofore laid down."). The issue of diminished funds was revisited in *Mattingly v. Fidanza*, 411 S.W.3d 250, 257 (Ky. App. 2013), when this Court wrote:

> However, the Supreme Court did not overrule *Allen*'s holding that the tracing of cash is met "when it is shown that nonmarital funds were deposited and commingled with marital funds and that the balance of the account was never reduced below the amount of the nonmarital funds deposited." *Allen*, 584 S.W.2d at 600. Therefore, this holding appears to still be good law in the Commonwealth.

We cannot agree with Wolf that he properly traced all existing funds and assets to the deposit of his workers' compensation settlement funds. It is undisputed that the joint account "was reduced below the amount of the nonmarital funds deposited." *Id.*[1] And the assets that remained by the date of dissolution came nowhere near total the amount of the funds he claims as his own.

Wolf conceded that he did not expect restoration of certain expenditures, reflected in finding No. 44 (under "Available Assets for Distribution") of the circuit court's order:

> 44. The Court finds that the following amounts from the $781,200 have been received by Husband or have been spent or expended in such a fashion that he does not seek a recovery or restoration of these funds: a) $81,200 which Husband testified was received by Wife to pay debts incurred during his recuperation; b) $85,278.00 which the Court previously awarded to him;

---

[1] The balance of the joint account was $1,644.16 on April 17, 2014.

-11-

and c) the lease and lease payments on the Buick Enclave.[2]

Wolf was required to trace the remaining amount, which the circuit court found he failed to do sufficiently. This finding is not "manifestly against the weight of the evidence[,]" and we decline to disturb it. *Hempel v. Hempel*, 380 S.W.3d 549, 551 (Ky. App. 2012) (internal citation omitted).

It then became incumbent upon the circuit court to determine nonmarital contributions towards marital assets. We shall examine each of Wolf's specific allegations of factual error separately, beginning with the finding regarding the parties' marital home on Crimson Drive. The home, which had been purchased in 2013 for $330,000.00, sold for $459,000.00 in 2017. The net closing proceeds after satisfaction of the mortgage indebtedness and other expenses was $199,643.66, the entirety of which was held in escrow by Wolf's attorney. The circuit court held that Wolf had sufficiently traced $165,000.00 from his nonmarital funds to the property, stating:

> Husband and Wife's purchase of 211 Crimson Drive included a $150,000.00 down payment. These funds came from the parties' joint account (4278) to Wife's checking account (4943) to the closing. Despite the $150,000.00 down payment traveling through Wife's account, Husband had sufficiently traced this down payment back to its non-marital roots from the personal

---

[2] Although Wolf agreed that the Enclave was a gift to his wife, he contested the charges (totaling $2,222.00) for excess mileage and unpaid tolls at the lease turn-in. The circuit court ordered one half of that amount (*i.e.*, $1,111.00) restored to Wolf from Hamilton's counsel's escrow account.

-12-

> injury settlement.  Husband also wrote a check to Jeremy Rigney, for improvements he was to make to the property.  Husband has sufficiently traced this check to the non-marital personal injury settlement.  This leaves a marital share of this property of $34,643.66 which will be divided equitably by the Court.

Even though his nonmarital contribution was restored to him, Wolf argues that it was erroneous for the circuit court to determine that the entirety of the increase in the home's value was marital property and divide it accordingly.

We agree that the circuit court failed to address whether the home's increase in value should have been apportioned according to the formula enunciated in *Brandenburg v. Brandenburg*, 617 S.W.2d 871 (Ky. App. 1981); *accord Fehr v. Fehr*, 284 S.W.3d 149 (Ky. App. 2008).  We are cognizant of the fact that it was Wolf's burden to submit sufficient evidence to overcome the presumption that the increase in value was marital.  *See* KRS 403.190(3); *Travis v. Travis*, 59 S.W.3d 904 (Ky. 2001); *Kleet v. Kleet*, 264 S.W.3d 610, 614 (Ky. App. 2007) ("If nonmarital property increases in value during the marriage, the trial court must determine the reason for the increase.  If the increase is attributable to general economic conditions, it is nonmarital; where the parties' joint efforts cause the increase, it is marital property.").  Because the circuit court did not deal with the issue, the matter must be remanded for further findings on the issue of increase in value of the marital property.  However, we add that the record fully supports the circuit court's finding that Wolf was responsible for losing the parties' first

(and higher) contract for sale of the property and affirm the holding in regard to allocating half the amount of that loss as restoration to Hamilton. CR 52.01; *McVicker*, *supra*; *Young*, *supra*. The same holds true for the court's finding that Hamilton was entitled to reimbursement for excessive mortgage payments made by her after the sale of the property. *Id.*

The issue of the increase in value of the Medley Drive property (Hamilton's residence acquired prior to the parties' marriage) was evaluated pursuant to the *Brandenburg* principles. The circuit court's allocation regarding the property ($14,870.76 of the proceeds to Wolf) is supported by substantial evidence of record, and we decline to engage in further discussion of that issue. *Id.*

Regarding Wolf Capital LLC (the parties' house-flipping venture), the circuit court held that Wolf failed to meet his burden of proving that the initial investment (made prior to the business's incorporation) was made solely with his nonmarital funds. Wolf argues that this finding is clearly erroneous, but we disagree. The circuit court found that the purchase, remodeling, and sale of the four properties in question resulted in total profits of $76,493.66. The court concluded, in pertinent part, that:

> There has not been sufficient proof that those funds were
> originally from the personal injury settlement. Chris
> Carter [the parties' Florida contractor] testified that he
> believed the funds for the transaction were from
> Husband's settlement, but he could not adequately
> support why that was his belief. His testimony coupled

-14-

> with his long standing friendship with Husband requires the Court to find his testimony to be lacking. The accounts the funds were removed from and deposited into also showed other deposits and withdrawals by each party. The Court, having found the proceeds to be marital property, orders that the tax responsibility should also be divided evenly as well.

We defer to the circuit court's superior position to judge the credibility of the witnesses. *Moore*, 110 S.W.3d at 354. Wolf's arguments to the contrary are not persuasive, and we affirm the circuit court's division of this asset as well.

Wolf next claims that the entirety of the parties' joint household goods should have been given to him as purchased with funds from the workers' compensation settlement. As the circuit court found, Wolf "testified that he has no desire to have any of the belongings that are currently in Wife's possession. Husband also lives in Florida making transportation of these less-wanted items more problematic." The circuit found the personal possessions to have a value of $11,982.22 and awarded them to Hamilton. Wolf fails to convince us that this finding is clearly erroneous. *Id.*

We likewise find no merit to Wolf's contention that Hamilton dissipated assets. The issue of alleged Civil Rules violations is moot.

The order of the Madison Circuit Court setting aside the settlement agreement as unconscionable is affirmed. The direct appeal is affirmed in part,

-15-

reversed in part, and remanded for further proceedings consistent with this

Opinion.  The cross-appeal is affirmed.

ALL CONCUR.


BRIEFS FOR APPELLANT/
CROSS-APPELLEE:

Jimmy Dale Williams
Randy Martin O'Neal
Richmond, Kentucky

BRIEFS FOR APPELLEE/
CROSS-APPELLANT:

John P. Schrader
Lexington, Kentucky