**Debra BAILEY (Now Gallant),
Appellant,**

v.

**Ellis BAILEY, Appellee.**

No. 2006–CA–000533–MR.

Court of Appeals of Kentucky.

Aug. 17, 2007.

M. Alex Rowady, Winchester, KY, for appellant.

No brief filed for appellee.

Before COMBS, Chief Judge; MOORE and NICKELL, Judges.

*OPINION*

NICKELL, Judge.

Debra Bailey (now Gallant) (hereinafter "Debra") appeals from the final judgment of the Fayette Family Court entered on February 14, 2006, denying her claims against her former husband, Ellis Bailey (hereinafter "Ellis"). For the following

reasons, we reverse and remand this cause for further proceedings.

## FACTUAL BACKGROUND

Debra and Ellis were divorced by a decree of dissolution of marriage entered in the Clark Circuit Court on June 24, 1994.[1] The decree incorporated a separation agreement entered into between the parties on April 20, 1994, which provided for the care, custody, and control of the minor children, payment of child support and medical insurance for the children, distribution of marital assets and debts including the marital residence, and division of personal property. The agreement provided that Ellis would pay child support for the minor children, provide major medical and dental insurance for the children, and payment for any uncovered medical bills would be divided equally between the parties. Furthermore, Ellis was to convey his interest in the marital home to Debra within ten days of the entry of the decree.

On March 14, 2002, Debra filed a civil action against Ellis in the Scott Circuit Court.[2] Debra sought a judgment against Ellis for (1) reimbursement of $5,644.75 for health insurance premiums she paid on behalf of the children; (2) reimbursement of $7,772.78 for one-half of the medical expenses incurred by the children and paid by Debra because they were not covered by insurance; (3) monetary damages of $13,734.26 for Ellis's failure to convey his interest in the marital residence to her in accordance with the separation agreement; and (4) reimbursement of $1,941.91 for one-half of the funeral expenses incurred due to the death in 1999 of the parties' oldest child. The Scott Circuit Court entered an order on June 27, 2002, dismissing Debra's complaint stating that "the most appropriate venue for this matter is the Clark Circuit Court." The Scott Circuit Court made no findings as to the merits of Debra's claims.

On November 7, 2003, Debra filed the same complaint in the Fayette Circuit Court.[3] When Ellis did not file a responsive pleading, on January 23, 2004, Debra filed a motion and affidavit requesting default judgment. On February 3, 2004, Ellis filed a motion to dismiss the complaint, along with his answer to the complaint and a request for attorney's fees. On February 9, 2004, the Eighth Division of the Fayette Circuit Court entered an order denying Debra's motion for default judgment, denying Ellis's motion to dismiss, and transferring the case to the First Division of the Fayette Family Court. The Fayette Family Court held a final hearing in the civil action on December 15, 2005. The family court denied all of Debra's claims and dismissed her complaint against Ellis. This appeal followed.

On appeal, Debra raises four issues in urging reversal of the family court, the first being a question of law as to the proper enforcement of the parties' Separation Agreement executed on April 20, 1994, the second and third arising from specific requirements contained in the Separation Agreement, and the fourth arising from the funeral contract executed on January 17, 1999. Ellis has not filed a brief with this Court. Under the provisions of Kentucky Rules of Civil Procedure (CR) 76.12(8)(c), if an appellee fails to file a brief within the time allowed, the court is per-

---

1. There were three children born during the parties' marriage. The oldest child became emancipated in February 1997. The middle child became emancipated in June 2000. The youngest child became emancipated in April 2007.

2. Ellis then resided in Scott County.

3. Debra resided in Fayette County at the time this action was commenced.

mitted to "reverse the judgment if appellant's brief reasonably appears to sustain such action[.]" We agree that Debra's brief justifies the reversal she seeks.

## STANDARD OF REVIEW

We review questions of law *de novo*. *Western Ky. Coca–Cola Bottling Co., Inc. v. Revenue Cabinet*, 80 S.W.3d 787, 790 (Ky.App.2001). However, findings of fact will "not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the [family] court to judge the credibility of the witnesses." CR 52.01; *Sherfey v. Sherfey*, 74 S.W.3d 777, 782 (Ky.App.2002). A family court operating as finder of fact has extremely broad discretion with respect to testimony presented, and may choose to believe or disbelieve any part of it. A family court is entitled to make its own decisions regarding the demeanor and truthfulness of witnesses, and a reviewing court is not permitted to substitute its judgment for that of the family court, unless its findings are clearly erroneous. "A factual finding is not clearly erroneous if it is supported by substantial evidence." *Sherfey, supra* (footnote omitted). Substantial evidence has been conclusively defined by Kentucky courts as that which, when taken alone or in light of all the evidence, has sufficient probative value to induce conviction in the mind of a reasonable person. *Owens–Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky.1998); *Janakakis–Kostun v. Janakakis*, 6 S.W.3d 843, 852 (Ky.App.1999) (citing *Kentucky State Racing Commission v. Fuller*, 481 S.W.2d 298, 308 (Ky.1972)).

## ANALYSIS

### I. SEPARATION AGREEMENT ENFORCEMENT

Debra first contends the Fayette Family Court erred in applying principles of equity in its interpretation of the enforcement of the Separation Agreement signed by the parties in 1994 and incorporated into the decree of dissolution of marriage. Instead, she contends the family court should have enforced the Separation Agreement as if it were a contract. We agree.

Kentucky Revised Statutes (KRS) 403.180(2) provides that the terms of a separation agreement, "except those providing for the custody, support, and visitation of children, are binding upon the court unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties ... that the separation agreement is unconscionable." The term "unconscionable" has been defined as "manifestly unfair or inequitable." *Wilhoit v. Wilhoit*, 506 S.W.2d 511, 513 (Ky.1974). A separation agreement which was originally determined not to be unconscionable may later be modified if due to a change in circumstances the agreement has become unconscionable. *Peterson v. Peterson*, 583 S.W.2d 707 (Ky.App.1979). However, the party challenging the agreement as unconscionable has the burden of proof. *Id.* at 711.

The Separation Agreement executed by the parties, dated April 20, 1994, was a comprehensive instrument addressing all issues concerned in the dissolution proceeding. The Separation Agreement consists of seven numbered paragraphs which address issues relating to child custody and support, payment of medical bills and insurance for the children, and marital property including the marital residence, marital debts, and personal property. The paragraphs relevant to this proceeding state as follows:

4. Husband shall pay for major medical and dental insurance for the parties'

children. Husband and wife shall be equally responsible for any medical and dental bills not covered by insurance.

5. Husband shall deed his interest in the marital home, located at 326 S. Main Street, Winchester, KY, to wife, within 10 days of entry of a Decree of Dissolution.

6. Wife agrees to assume the debt to Pioneer Federal Savings Bank on the marital home, and she shall hold husband free and harmless from any liability thereon.

The final Decree was entered on June 24, 1994. Paragraph seven of the Decree states that "[t]he Agreement between the parties dated April 20, 1994, shall be incorporated by reference into this Decree." Hence, the original Separation Agreement was found by the Clark Circuit Court not to be unconscionable, and modification is thus impermissible absent a showing of a change in circumstances.

Finally, KRS 403.180(5) specifies the "[t]erms of the agreement set forth in the decree are enforceable by all remedies available for enforcement of a judgment, including contempt, and *are enforceable as contract terms* " (emphasis added). Based on the plain language of the statute, the family court was clearly in error when it applied principles of equity in interpreting enforcement of the parties' Separation Agreement. The terms of the Separation Agreement should have been enforced as contract terms. Thus, reversal and remand for further proceedings is required.

## A. HEALTH INSURANCE

█ Debra next argues the Fayette Family Court erred by finding she failed to present sufficient proof that Ellis had not maintained health insurance on the children as ordered by the Separation Agreement. She claims that because Ellis failed to provide health insurance, she is entitled to full reimbursement for health insurance premiums she paid for the children's coverage through her employer.

Our review of the record reveals that during her testimony at the hearing, Debra introduced medical bills showing the children received treatment in June 2000, August 2000, July 2002, September 2002, and October 2002. There is proof these bills were presented to Ellis' insurance provider, Blue Cross and Blue Shield, but were not paid due to insurance coverage not being in effect at the time medical treatment was provided. Debra also provided her pay stubs to prove she provided family insurance coverage through her employer.

Ellis testified he maintained health insurance "most always" from 1995 through July 2003. He specifically recalled insurance coverage through his employer or privately funded by him from 1995 through August 2001, but he did not discuss any insurance coverage from August 2001 until he began to pay the portion of Debra's premium on the remaining minor child through the county attorney's office in July 2003.

The family court's finding on this issue is vague and incomplete. It was clearly erroneous for the trial court to summarily state Debra did not provide sufficient evidence on this issue. We believe Debra has filed proper evidence in the record relating to her payment of at least a portion of the health insurance premiums for the children. Thus, we reverse on this issue and remand the matter to the family court to make further specific findings as to this issue.

## B. MEDICAL BILLS

█ In conjunction with her previous argument, Debra next argues that the

Fayette Family Court clearly erred in finding she did not provide sufficient proof to Ellis of medical bills that were not paid by insurance. The family court's finding on this issue is stated as follows:

At trial, [Debra] testified that [Ellis] was aware that he owed money to her, in the form of reimbursement for medical bills, and that she adequately and timely informed him of his obligations. She testified that he was made aware of these obligations through a variety of means, including the posting of the bills on the Internet, mailing them to him, and having them sent to him directly by the medical provider. [Ellis] denied these allegations and testified that [Debra] had not provided him with proof of any amounts that he owed. Rather, he stated that [Debra] would provide him only with her own type-written summary of what he owed but failed to give him proof in the form of bills that he was required to pay. This Court found that [Debra] did not present sufficient proof that she provided proof of medical bills to [Ellis]. Furthermore, as [Debra] sat on her rights for so long, it is difficult for this Court to determine the credibility of the witnesses' testimony and the evidence presented. As such, this Court found that it would be inequitable to award damages to [Debra] for past due medical bills absent more conclusive proof of [Ellis's] failure to pay. . . .

Debra testified that the medical bills she provided to the Fayette Family Court and to Ellis's attorney in this proceeding were the same bills she previously submitted to Ellis through the Clark Circuit Court, but he had never paid his one-half of the bills.[4]

She further testified about the numerous ways Ellis had been apprised of the nature and amount of these medical bills. Thus, the Fayette Family Court incorrectly ruled Debra failed to provide proof of the bills to Ellis. Further, the family court again improperly applied principles of equity in interpreting the parties' Separation Agreement. Therefore, we reverse the family court as to its finding on this issue.

## C.  RELOCATION EXPENSES

■   Debra's claim on this issue also relates back to the parties' signing of the Separation Agreement in 1994. Under the terms of the Separation Agreement, Ellis was to deed his interest in the marital home to Debra within 10 days of the entry of the Decree. In turn, Debra was to assume the debt to the bank. In June 1998 Debra was offered an opportunity through her employer for career advancement in the form of a transfer to Massachusetts. If she sold the residence herself, Debra's employer would have paid her relocation expenses, including up to a seven percent broker's commission, attorney's fees, property taxes, and the cost of a termite inspection. Further, until the house was sold, the employer would have paid utilities for three months, insurance premiums for nine months, real estate taxes prorated for nine months, and mortgage interest. Debra claims that because Ellis did not quitclaim his interest in the marital residence to her as required by the decree of dissolution, she had to pay $13,734.26 in relocation money that her employer would not pay since the house was not sold and

---

4.   Debra noted that she had copied these specific bills from the Clark Circuit Court record prior to submitting them to Ellis's attorney and to the Fayette Family Court. However, we find no evidence these bills were copied from a record contained in any other court.

The bills do not show any identifying markings which would lead us to conclude that Debra had indeed copied the bills from the Clark County record. On remand, the Fayette Family Court should satisfy itself as to the authenticity of these bills.

closed upon within the requisite amount of time.

The Fayette Family Court decided this issue as follows:

> The Court finds that [Debra] did not present adequate proof that [Ellis] was responsible for [her] incurring said expenses. Specifically, it appears from testimony at trial that [Ellis] executed the quitclaim deed prior to the closing on [Debra's] house and that he gave the deed to his attorney for safekeeping. [Debra] admits that counsel for [Ellis] had the deed, although she does not know for how long it remained in the attorney's possession. Although [Ellis's] delay in signing the quitclaim deed may not have been entirely proper, his testimony before this Court indicates that he did not initially execute the quitclaim deed due to the advice of his attorney and assertions from the bank holding the mortgage. This Court finds that [Ellis] did execute the quitclaim deed and that it was done in sufficient time for [Debra] to close on her home within the allowable time for reimbursement of expenses from the relocation company. As such, [Debra] is not entitled to reimbursement from [Ellis].

As we explained previously, the Separation Agreement signed between the parties is an enforceable contract, and any failure of Ellis to timely quitclaim the marital residence to Debra in 1994 resulted in a breach of the contract by Ellis.

We agree with the family court that Ellis's failure to quitclaim the house in 1994 was improper. However, we disagree with the family court's finding that Ellis's signing of the quitclaim deed prior to the scheduled closing date somehow cured his breach of the Separation Agreement. While the deed was tendered to Ellis's attorney in sufficient time for Debra to close on the residence, such tender was

made in excess of four years outside the time limit specified in the Separation Agreement. Further, Debra's failure to immediately move to enforce Ellis's compliance with the Separation Agreement cannot be seen as a waiver of her contractual rights. *See Eaton v. Trautwein,* 288 Ky. 97, 155 S.W.2d 474, 477 (Ky.1941). Thus, the family court was clearly erroneous in finding that Ellis did not breach the Separation Agreement. Accordingly, we are compelled to reverse on this issue and remand to the family court for an evidentiary hearing as to whether Ellis's breach was sufficient to entitle Debra to reimbursement for the relocation expenses.

## II. FUNERAL CONTRACT ISSUE

■ Debra's final argument pertains to Ellis's failure to repay her one-half of the funeral expenses incurred due to the death of their oldest child in January 1999. The record shows that both Debra and Ellis signed a contract with Edgington, Mullins, and Taylor Funeral Home in Winchester, Kentucky, on January 17, 1999, which stated that they agreed to be jointly and severally responsible for payment of the funeral expenses. Debra testified that because she was traveling from Massachusetts to Winchester, her brothers and her father paid the funeral home in full and she repaid her family at a later date. Debra claims Ellis should be required to reimburse her for one-half of the expenses because both of their names appear on the funeral home contract. Ellis claims he was only liable to the funeral home and not directly to her, and there is no proof Debra actually repaid her family for the funeral expenses. The family court found as follows:

> The complaint alleges the parties executed a contract with Edgington Funeral Home on January 14, 1999[,] whereby they agreed to equally divide the expenses. In his answer, [Ellis] properly raises the defense of res judicata be-

cause a similar complaint was dismissed in Clark Circuit Court in 2002. As such, [Debra] cannot relitigate the issue here.

We hold the family court's finding on this issue is clearly erroneous because it incorrectly states the defense Ellis raised in his answer to Debra's complaint. In fact, Ellis mentioned that the family court lacked subject matter jurisdiction because Debra's claim, in the amount of $1,941.91, should have been filed in district court. He did not raise the issue of *res judicata* on the issue of repayment of funeral home expenses. It appears the family court raised *res judicata* as a *sua sponte* determination of the issue. We do not find any place in the record on appeal where this issue has been previously raised and decided. Although Ellis alludes in his answer to a Clark Circuit Court order relating to this issue, he did not testify regarding any such order, nor do we find any such order within the record on appeal. It is well-settled that *res judicata* is an affirmative defense. *See Yeoman v. Commonwealth, Health Policy Bd.,* 983 S.W.2d 459 (Ky. 1998); CR 8.03. As such, it can be waived. *Independent Order of Foresters v. Chauvin,* 175 S.W.3d 610 (Ky.2005). Ellis's failure to affirmatively plead this defense is fatal to the family court's ruling. Accordingly, we reverse the family court's finding on this issue and remand this issue to the family court for more complete findings consistent with this Opinion.

### CONCLUSION

Accordingly, we reverse the judgment of the Fayette Family Court. Further, we remand this cause for further proceedings and more specific findings consistent with this Opinion.

ALL CONCUR.