RENDERED: SEPTEMBER 17, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0186-ME

JOAQUIN FUENTES-ORDUNA                                   APPELLANT

v.
APPEAL FROM FAYETTE CIRCUIT COURT
HONORABLE KATHY W. STEIN, JUDGE
ACTION NO. 19-D-01464-002

VIRGINIA LINDSEY CARMICAL                                   APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, GOODWINE, AND JONES, JUDGES.

GOODWINE, JUDGE: Joaquin Fuentes-Orduna ("Joaquin") appeals from a

January 14, 2021 domestic violence order ("DVO") entered against him by the

Fayette Circuit Court, Family Division. After careful review of the entire record,

we affirm.

# BACKGROUND

Joaquin and Virginia Carmichael ("Virginia") were never married, but they have a minor son in common. This domestic violence action arose from an incident on January 1, 2021, when Virginia picked up their son from Joaquin at his residence. In the Petition/Motion for Order of Protection (the "Petition"),[1] she filed on January 4, 2021 on behalf of herself and her son, Virginia stated:

> Joaquin called me at 9AM and demanded that I pick up our son. He has been very volatile towards me lately, calling me "trash" and other names in front of our son. He also tells my son that I do not want him when I require him to take him on his designated visitation days. Due to the escalation of his recent behavior, I asked a male friend to accompany me because I do not feel safe. When I called to let Joaquin know that I'd arrived for our child he refused to let me take him, stating that "my child isn't going with any dogs." He told me to go back home, get my vehicle and return alone. When I refused to leave without my child and threatened to call the police, he came out and started his vehicle as if he were going to flee with my child. He also removed something from his glove box which appeared to be a firearm. I contacted police and waited for an officer to accompany me inside to get my child. While waiting, Joaquin was messaging me telling me to come in because he was leaving. I feel that he started the vehicle in an attempt to manipulate me into entering his residence and possibly harm me. Once the officer arrived he handed over my child and we left.
>
> I fear that he will harm me. He has access to firearms and has posted photos with them on social media. His disregard for authority and lack of impulse control also frightens me. He is undocumented and I am very afraid

---

[1] The Petition incorrectly states it was filed on December 4, 2021.

that he will take my child and flee or relocate and I will
not be able to find him.

The trial court entered an emergency protective order ("EPO") that same day and scheduled a hearing for January 14, 2021. The parties appeared before the trial court on January 14, 2021. Joaquin was represented by counsel and testified through an interpreter. Virginia was not represented by counsel.

Virginia's testimony in response to initial questions from the trial court was largely consistent with her Petition. On cross examination, Joaquin's attorney asked her what act of domestic violence Joaquin committed. In response, she admitted: "On the date in question, I don't believe he committed an act of domestic violence; however, I fear that he will in the future given his rather irrational behavior." She also testified on cross examination she was fifty or sixty feet away from Joaquin's vehicle when she saw him take the object out of the glove box and admitted she could not tell what the object was. Virginia also admitted she dismissed a prior petition for a domestic violence order against Joaquin and that while she agreed to share joint custody and equal timesharing of their child with him, she did not necessarily feel safe with the child being with Joaquin one half of the time. She explained she had spoken with an attorney and felt comfortable with the agreement at that time but is not comfortable with it now because she knows Joaquin has access to firearms.

Virginia's knowledge of Joaquin's access to firearms is based upon an April 19, 2020 social media post of him holding a firearm and other pictures on social media, including one he deleted the day she filed the underlying Petition. The photographs and social media posts were not entered into evidence at the hearing.

After cross examination, the trial court reviewed Virginia's prior domestic violence petition against Joaquin. After reviewing the petition, the trial court noted the petition was filed in December 2019 and, like this Petition, was based upon a disagreement involving their child. The trial court stated the prior petition alleges Joaquin arrived home drunk and threatened to put a bullet in Virginia's head if she took the child and that Virginia was concerned about continued threats he made against her life.

The trial court further stated there was a January 24, 2020 hearing on that petition, and Virginia, who was not represented by counsel, asked for the petition to be dismissed without prejudice. Joaquin's attorney[2] stated the parties had reached an agreement for 2-2-3 timesharing that prohibited Joaquin from consuming alcohol when caring for the child.

The trial court then stated: "Based upon the dismissal without prejudice by a person who was not represented by counsel, I am taking into

_____

[2] Joaquin was represented by a different attorney at the January 24, 2020 hearing.

-4-

consideration the allegations that were made in that petition." The trial court asked Virginia if the statements she made in the prior petition were true and correct, and Virginia said they were. The trial court also asked her if her prior testimony describing the agreement for joint custody and equal timesharing referred to this same 2-2-3 agreement, and Virginia confirmed it did.

The trial court then questioned Virginia on how the 2-2-3 timesharing with Joaquin had been going. Virginia testified it was not going very well. She said Joaquin's behavior towards her has been "relatively volatile." She stated the party exercising timesharing was supposed to pick up the child at daycare to minimize contact, but Joaquin came up with excuses to force her to pick up the child from daycare so he could come to her residence. She believes Joaquin does this to stay in contact with her and to keep tabs on her.

Virginia also testified that when Joaquin arrives to pick up the child, he typically makes advances towards her and rubs her hand when she is putting the child in the car seat. A couple of times, she allowed him to enter her residence, and he touched her behind or acted inappropriately.

The trial court then read into the record statements by Virginia from her Petition and asked Virginia to confirm that a Facebook photograph she referenced had been removed after she filed the Petition. Virginia responded

affirmatively and testified there was, however, still a picture of Joaquin with a gun on Instagram.

Joaquin testified next. He testified that "nothing happened" at the exchange on January 1, 2021. He stated that he told Virginia to get her own vehicle because the vehicle she had did not have a car seat for the child. He had no problem with her bringing a male friend to the exchange. He also stated he does not have any firearms, and the photo Virginia described was taken a long time ago. When asked by the trial court to confirm he has access to the firearm in the photo, he said he did not, and he has not seen the person who owned the firearm shown in the photograph for two or three years.

Joaquin also testified he has never made any threats against Virginia. The trial court then asked Joaquin where he was when he saw Virginia arrive in the vehicle to pick up the child. Joaquin testified he was inside his home. The court asked how he was able to see if there was a car seat in the vehicle. Joaquin testified he wanted Virginia to get her car because it had the car seat he purchased for their son. The trial court found this response to be contrary to his prior testimony, and Joaquin clarified that he figured the vehicle in which Virginia arrived did not have a car seat. The trial court asked Joaquin if he was honest with this answer, and he stated he was. The trial court then admonished him that he swore an oath to be honest with all his answers.

When the parties finished testifying, the trial court stated based upon the testimony, it found acts of domestic violence occurred in the past, and unless an order were entered, there will be further acts of domestic violence. The trial court did not identify orally on the record any evidence or particular grounds upon which its finding was based. The trial court then questioned Virginia on matters relating to timesharing, and Virginia provided additional testimony regarding Joaquin's behavior during exchanges.

The trial court entered a DVO against Joaquin on form AOC-275.3, checking the box stating "it was established by a preponderance of the evidence . . . that an act(s) of domestic violence and abuse . . . has occurred and may occur again . . . ." The trial court also wrote the following on its January 14, 2021 docket sheet: "this Pet filed previous EPO in Dec. 2019 that was dismissed at her request b/c they had reached a TS agreement. R was represented by counsel, Pet was not. Finding of DV that will continue if no DVO entered."[3]

The DVO restrains Joaquin from contacting or communicating with Virginia and their child, with the only exception being he can visit the child at Greenhouse 17.[4] The DVO also restrains him from going within 500 feet of

---

[3] We do not express an opinion as to the sufficiency of the trial court's findings. Joaquin did not request additional findings and only challenges the sufficiency of the evidence to support entry of the DVO.

[4] Greenhouse 17 is a nonprofit organization that provides, among other things, locations for supervised visitation, monitored exchanges, and other related services.

Virginia's residence and workplace. The trial court also awarded temporary custody of the parties' child to Virginia, and the DVO prohibits Joaquin from possessing firearms for the duration of the DVO, which expires January 14, 2023.

## STANDARD OF REVIEW

To enter a DVO, the trial court must conduct a hearing and find "by a preponderance of the evidence" that domestic violence and abuse has occurred and may occur again. KRS[5] 403.740(1). "The preponderance of the evidence standard is satisfied when sufficient evidence establishes the alleged victim was more likely than not to have been a victim of domestic violence." *Caudill v. Caudill*, 318 S.W.3d 112, 114 (Ky. App. 2010) (citation omitted). Our standard of review for factual determinations is whether the trial court's findings were clearly erroneous. *Id*. Findings of fact are not clearly erroneous if they are supported by substantial evidence. *Id*. at 114-15 (citing *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003)).

## ANALYSIS

On appeal, Joaquin argues: (1) the trial court abused its discretion in finding that an act of domestic violence and abuse occurred and may occur again; (2) it was an abuse of discretion for the trial court to use the alleged act of domestic violence from the previously dismissed domestic violence petition as the basis for

---

[5] Kentucky Revised Statutes.

granting a DVO in this case; and (3) Virginia's grievances should have been addressed in family court instead of domestic violence court.

Before addressing Joaquin's arguments, we must first discuss the parties' violations of CR[6] 76.12. It is a dangerous precedent to permit appellate advocates to ignore procedural rules. *Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010). Procedural rules "do not exist for the mere sake of form and style. They are lights and buoys to mark the channels of safe passage and assure an expeditious voyage to the right destination. Their importance simply cannot be disdained or denigrated." *Id*. (quoting *Louisville and Jefferson Cty. Metropolitan Sewer Dist. v. Bischoff*, 248 S.W.3d 533, 536 (Ky. 2007)).

Here, Joaquin did not comply with CR 76.12(4)(c)(v), which requires at the beginning of each argument "a statement with references to the record showing whether the issue was properly preserved for review, and, if so, in what manner." "It is not the function or responsibility of this court to scour the record on appeal to ensure that an issue has been preserved." *Koester v. Koester*, 569 S.W.3d 412, 415 (Ky. App. 2019) (citing *Phelps v. Louisville Water Co.*, 103 S.W.3d 46 (Ky. 2003)). We require a statement of preservation:

> so that we, the reviewing Court, can be confident the
> issue was properly presented to the trial court and
> therefore, is appropriate for our consideration. It also has
> a bearing on whether we employ the recognized standard

---

[6] Kentucky Rules of Civil Procedure.

of review, or in the case of an unpreserved error, whether palpable error review is being requested and may be granted.

*Oakley v. Oakley*, 391 S.W.3d 377, 380 (Ky. App. 2012).

CR 76.12(4)(c)(v) also requires an appellant's argument to contain "ample supportive references to the record[.]" Joaquin's brief references the video record in his statement of the case. This, however, does not satisfy CR 76.12(4)(c)(v)'s separate requirement for his brief's argument to contain "ample supportive references to the record." In violation of CR 76.12(4)(c)(v), Joaquin's brief contains only a handful of citations to the record in his first argument and none in his second and third arguments.

Also, Joaquin's appendix does not comply with CR 76.12(4)(c)(vii), which requires appellants to include copies of the findings of fact, conclusions of law, and judgment in the appendix. Joaquin's appendix includes only the trial court's January 14, 2021 docket sheet and the Petition. It omits the trial court's AOC Form 275.3 DVO and does not list the documents it includes and where each such document may be found in the record. CR 76.12(c)(vii).

Compliance with CR 76.12 is mandatory, and failing to comply with the civil rules is an unnecessary risk appellate advocates should not chance. *Petrie v. Brackett*, 590 S.W.3d 830, 834-35 (Ky. App. 2019) (citing *Hallis*, 328 S.W.3d at 696). "Our options when an appellate advocate fails to abide by the rules are: (1)

to ignore the deficiency and proceed with the review; (2) to strike the brief or its offending portions, CR 76.12(8)(a); or (3) to review the issues raised in the brief for manifest injustice only[.]" *Hallis*, 328 S.W.3d at 696 (citing *Elwell v. Stone*, 799 S.W.2d 46, 47 (Ky. App. 1990)).

Before deciding this issue, we note Virginia failed to file a brief. Subject to exceptions that do not apply here, the filing of a brief by appellants and appellees is mandatory. CR 76.12(1). Our options when an appellee fails to file a brief include: (1) accept the appellant's statement of the facts and issues as correct; (2) reverse the judgment if appellant's brief reasonably appears to sustain such action; or (3) regard the appellee's failure as a confession of error and reverse the judgment without considering the merits of the case. CR 76.12(8)(c).

"The decision as to how to proceed in imposing such penalties is a matter committed to our discretion." *Roberts v. Bucci*, 218 S.W.3d 395, 396 (Ky. App. 2007) (citations omitted). We recognize that issuance of a DVO is a serious matter, as it affords the victim protection from physical, psychological, and emotional harm. *Matehuala v. Torres*, 547 S.W.3d 142, 145 (Ky. App. 2018). Joaquin did not request a review for palpable error. "However, 'the impact of having an EPO or DVO entered improperly, hastily, or without a valid basis can have a devastating effect on the alleged perpetrator.'" *Id.* (quoting *Wright v. Wright*, 181 S.W.3d 49, 52 (Ky. App. 2005)). We will, therefore, review for

manifest injustice only. *Elwell*, 799 S.W.2d at 48. "[T]he required showing is probability of a different result or error so fundamental as to threaten a [party's] entitlement to due process of law." *Petrie*, 590 S.W.3d at 835 (quoting *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky. 2006)).[7]

Joaquin first argues the trial court abused its discretion in finding an act of domestic violence or abuse occurred and may again occur. "Domestic violence and abuse" is defined as "physical injury, serious physical injury, stalking, sexual abuse, strangulation, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, strangulation, or assault between family members or members of an unmarried couple[.]" KRS 403.720(1). "Imminent" means "impending danger, and, in the context of domestic violence and abuse as defined by KRS 403.720, belief that danger is imminent can be inferred from a past pattern of repeated serious abuse." KRS 503.010(3).

After careful review of the record, we find no manifest injustice in the trial court's finding that an act of domestic violence occurred and may occur again if a DVO is not entered. We first address the trial court's finding that an act of domestic violence or abuse occurred.

---

[7] Our decision to review for manifest injustice only is based solely on Appellant's failure to comply with CR 76.12(4)(c)(v), which sets forth the requirement for preservation statements. *See Blackaby v. Barnes*, 614 S.W.3d 897, 900 n.4 (Ky. 2021) (indicating palpable error review is appropriate only where briefing defect pertains to statements regarding preservation of error). Appellant's argument contains no preservation statements.

The trial court's docket sheet indicates this finding is based upon Joaquin's threats against Virginia's life contained in her December 2019 petition. The petition itself is not part of the record on appeal; however, after reading statements from it into the record, the trial court asked Virginia if those statements were true, and she stated they were. *See Hohman v. Dery*, 371 S.W.3d 780, 781 (Ky. App. 2012) (stating the court read the petition into the record, and the petitioner adopted the statements contained in it); KRE[8] 614(b) (stating "[t]he court may interrogate witnesses, whether called by itself or by a party."). It was reasonable to infer that Joaquin's threat in December 2019 to put a bullet in Virginia's head and other threats against her life caused Virginia to fear imminent injury and, therefore, constitute an act of domestic violence.

This is not a situation in which the trial court took judicial notice of information contained in the December 2019 petition. Instead, it read from the petition and questioned Virginia about it. Joaquin did not object to the trial court's review of the December 2019 petition. Nor did he object to the trial court's questioning of Virginia about the threats. Joaquin also had the opportunity to cross-examine Virginia relating to these threats.

Joaquin denied threatening Virginia. Much deference, however, is to be given to the decision of a trial court, and "[a] family court operating as finder of

---

[8] Kentucky Rules of Evidence.

fact has extremely broad discretion with respect to testimony presented and may choose to believe or disbelieve any part of it." *Bailey v. Bailey*, 231 S.W.3d 793, 796 (Ky. App. 2007). It is clear from the record that the trial court questioned Joaquin's truthfulness.

We also find no error in the trial court's finding that domestic violence or abuse may occur again. To make this finding, the trial court must consider the totality of the circumstances. *See Pettingill v. Pettingill*, 480 S.W.3d 920, 925 (Ky. 2015) ("The predictive nature of the standard requires the family court to consider the totality of the circumstances and weigh the risk of future violence against issuing a protective order.").

Virginia's testimony regarding Joaquin's prior threats supports this finding. *See* KRS 503.010(3) (stating "belief that danger is imminent can be inferred from a past pattern of repeated serious abuse."). In addition, Virginia testified that Joaquin's behavior has been hostile, volatile, and irrational, and she provided evidence of various actions by Joaquin at exchanges indicating further acts of domestic violence may occur.

For example, she testified he makes excuses to pick up their child at her residence to keep tabs on her. She also testified of photographs showing him with firearms. She testified he made advances towards her and touched her inappropriately at exchanges. Also, like the exchange in December 2019 when he

-14-

threatened Virginia, there is evidence Joaquin still refuses, at least initially, to allow Virginia to take their child at scheduled exchanges. At the January 1, 2021 exchange, she testified Joaquin would not give her the child because he said he did not want the child to go with a dog. At the same exchange, she saw him take a black object out of his vehicle's glove box and testified he told her to leave and come back alone to his apartment. She felt he wanted her to come in his apartment to harm her. Furthermore, at the time Virginia filed this Petition, their child was not even three years old. The parties will continue to co-parent for many more years. Considering the totality of the circumstances, we conclude the trial court did not err in finding acts of domestic violence may occur again.

The cases relied upon by Joaquin to argue the trial court abused its discretion in issuing the DVO are factually distinguishable. In each case, the DVO was reversed because entry of the DVO was not supported by substantial evidence. In *Caudill*, 318 S.W.3d at 115, the trial court erred by issuing a DVO based solely upon an "unwanted touching," which consisted of pushing a person out of the way to enter the home. In *Pasley v. Pasley*, 333 S.W.3d 446, 448 (Ky. App. 2010), the petitioner relied upon an unsupported statement that she was unsure what the respondent would do and was afraid of him. Also, while allegations in *Hall v. Smith*, 599 S.W.3d 451, 453 (Ky. App. 2020), contain similarities to the Petition here, there was no evidence in *Hall* that an act of domestic violence occurred, and

there was no evidence of an imminent danger of domestic violence. Unlike these cases, there is evidence Joaquin committed an act of domestic violence in December 2019. There is also evidence of ongoing conflict at exchanges since 2019 supporting Virginia's claim that she fears future acts of domestic violence.

Joaquin's second argument is it was an abuse of discretion for the trial court to base the DVO upon acts of domestic violence alleged in the December 2019 domestic violence petition. He argues Virginia could not have been in genuine fear of imminent harm from those threats because she did not mention them in her Petition or in her initial testimony at the hearing and because she dismissed the December 2019 petition by agreement and then agreed to joint custody and equal timesharing. "We reiterate that the family court is in the best position to judge the credibility of the witnesses and weigh the evidence presented." *Hohman*, 371 S.W.3d at 783. Also, the trial court questioned Joaquin's truthfulness and was free to believe or disbelieve any part of the parties' testimony. *Bailey*, 231 S.W.3d at 796.

Last, Joaquin argues Virginia's concerns should have been addressed in family court instead of through a petition for a DVO. More specifically, he argues Virginia's motivation in filing the domestic violence petition was to litigate child custody issues at less expense and to try and obtain an advantage in child custody disputes with Joaquin. We recognize, of course, that DVOs are intended

-16-

to protect victims of domestic abuse. *Manning v. Willett*, 221 S.W.3d 394, 397 (Ky. App. 2007). We also do not condone the frivolous use of obtaining DVOs to manipulate courts "in order to get 'one-up' on the other party" in some other proceeding such as a civil lawsuit. *Wright*, 181 S.W.3d at 52. Here, however, we conclude the trial court did not err in issuing the DVO, and Joaquin directs us to nothing in the record to support his contrary argument.

## CONCLUSION

For the reasons stated above, we affirm the Fayette Circuit Court's January 14, 2021 DVO against Appellant Joaquin Fuentes-Orduna.

ALL CONCUR.


BRIEF FOR APPELLANT:                    NO BRIEF FOR APPELLEE.


Daniel L. Thompson
Lexington, Kentucky