RENDERED: MARCH 14, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1294-MR

KAREN RODRIGUEZ        APPELLANT

         APPEAL FROM JEFFERSON CIRCUIT COURT
v.          HONORABLE DENISE D. BROWN, JUDGE
         ACTION NO. 21-CI-500228

RODRIGO RODRIGUEZ        APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, L. JONES, AND McNEILL, JUDGES.

JONES, L., JUDGE: Appellant, Karen Rodriguez (Karen), filed a notice of appeal

from orders of the Jefferson Circuit Court entered on October 4, 2023, and

November 11, 2023, which denied her motion made pursuant to Kentucky Rule of

Civil Procedure (CR) 60.02, to amend the parties' Marital Settlement Agreement

(MSA) and her subsequent CR 59.05 motion to amend the October 4, 2023 order.[1]

---

[1] An order denying a motion to alter, amend, or vacate filed pursuant to CR 59.05 is not in itself
a final and appealable order. Thus, we treat this matter as an appeal of the October 4, 2023 order
denying Karen's requested relief under CR 60.02 only. *See Mingey v. Cline Leasing Serv., Inc.*,

The motions concerned the division and assignment of a portion of Appellee's, Rodrigo Rodriguez's (Rodrigo), retirement accounts, a parcel of real property (Brownsboro property), and a debt associated with the Brownsboro property. After careful review of the record on appeal, the briefs filed, and the relevant law, we affirm.

BACKGROUND

The parties were married on August 15, 1995, and separated in September 2020. Both parties acquired significant marital assets during the marriage. Rodrigo filed a petition for dissolution of marriage on January 27, 2021. At the time he filed his Preliminary Verified Disclosure Statement (PVDS) in June 2021, Rodrigo had a Fidelity 401(k) (the 401(k)) containing approximately $272,000. (Record, ("R") at 32.) The parties attended mediation on April 18, 2023, and the result was the April 28, 2023 MSA which was accepted by the court and incorporated into the Decree of Dissolution entered on May 1, 2023. (R. at 248, 259.) At the core of the dispute in this case are the following terms of the MSA.

The first reads:

---

707 S.W.2d 794, 796 (Ky. App. 1986) ("Unlike a ruling denying a motion for relief under CR 60.02, a ruling on a CR 59.05 motion is not a final or an appealable order. There is no authority in the rules to ask for reconsideration of a mere order which rules on a motion to reconsider a judgment.") (citation omitted).

-2-

Karen is awarded the [Brownsboro property] free and clear from any and all claim by Rodrigo. Karen shall take all steps necessary and execute an[y] required documents needed to remove Rodrigo from any debt encumbering the property and for him to legally transfer his interest in the property to her. Rodrigo is not listed on the deed to the property.

A Home Equity Line currently encumbers the Brownsboro [] property.[2] Thirty (30) days after receipt of the funds Karen is to receive out of Rodrigo's retirement, she shall pay off this debt in its entirety. Until such time that the debt is paid in full, Karen shall continue paying the monthly payment on this debt.

(R. at 249.)

The second provides:

In order to equalize division of the marital estate, Karen is awarded $130,000 from Rodrigo's [401(k)]. Rodrigo is awarded the remainder of the funds in the [401(k)], and all other retirement accounts in his name, free and clear from any and all claim by Karen. There are no other retirement plans. The parties agree to engage Tacasha Thomas to draft and file the Qualified Domestic Relations Order [QDRO] and they shall equally divide the cost of her services.

(R. at 250-51.) Notably, no precise amounts of any of the assets or debts divided

are included in the MSA or the Decree of Dissolution.[3] Pursuant to the terms of

---

[2] This $125,000 line of credit was obtained during the marriage. (R. at 316.) As of October 8, 2018, the amount of credit accrued on that account was $124,693.14. (R. at 343.)

[3] Besides the $130,000, the only other monetary figures mentioned in the MSA are the fee for an appraisal for Karen's business and the $10 in the parties' joint bank account. (R. at 250, 252.)

the MSA, Karen continued making payments relative to the associated debt on the Brownsboro property, and as of August 7, 2023, the amount owed was precisely what was owed from October 2018 – $124,693.14. (R. at 298.) On July 12, 2022, the circuit court entered a QDRO which provided that Karen would receive a $130,000 interest in Rodrigo's 401(k) and would pay all related taxes and withdrawal penalties. (R. at 265.)

On September 5, 2023, Karen filed a motion under CR 60.02 in which she explained that, after the execution of the QDRO and the $130,000 interest from the 401(k) was transferred to her, she discovered she would only be receiving approximately $104,000, due to taxes and early withdraw penalties. (R. at 294.) She claimed that the parties intended for Karen to receive a "net" $130,000 from the 401(k), which was to be used for the sole purpose of satisfying the debt on the Brownsboro property. As the amount from the 401(k) was $20,000 less than what she expected to be receiving, Karen argued that the MSA is unconscionable because she is unable to pay off the entirety of the remaining debt on the Brownsboro property. Thus, she asked for the MSA to be amended to read that Karen would receive "no less" than $130,000 from Rodrigo's 401(k), for a second QDRO to be entered, or for Rodrigo to pay the approximately $20,000 difference. The circuit court denied her motion on October 4, 2023. It similarly denied her

subsequent motion filed pursuant to CR 59.05 to amend the October 4, 2023 Order. This appeal followed.

STANDARD OF REVIEW

A marital settlement agreement is binding upon a circuit court "unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties . . . that the separation agreement is unconscionable." Kentucky Revised Statutes (KRS) 403.180(2). In determining whether a marital settlement agreement is unconscionable, or if it resulted from duress, undue influence, or overreaching, a circuit court has broad discretion, and this Court shall not disturb the decision unless there is an abuse of discretion. *Andrews v. Andrews*, 611 S.W.3d 271, 275 (Ky. App. 2020) (citations omitted). A party challenging a marital settlement agreement initially approved by a circuit court has the burden of proof to show circumstances have changed which renders the agreement to be unconscionable. *Bailey v. Bailey*, 231 S.W.3d 793, 796 (Ky. App. 2007) (citations omitted).

Similarly, this Court reviews issues surrounding motions filed pursuant to CR 60.02 for an abuse of discretion. *Age v. Age*, 340 S.W.3d 88, 94 (Ky. App. 2011). A trial court has abused its discretion if its "decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

ANALYSIS

In the case at hand, Karen has asserted the need to set aside and amend the MSA under CR 60.02 sections (a) and (f). In relevant part, CR 60.02 provides:

> On motion a court may, upon such terms as are just, relieve a party or his legal representative from its final judgment, order, or proceeding upon the following grounds: (a) mistake, inadvertence, surprise or excusable neglect . . . or (f) any other reason of an extraordinary nature justifying relief.

Generally, "the law favors the finality of judgments. Therefore, relief may be granted under CR 60.02 only with extreme caution and only under the most unusual and compelling circumstances." *Age*, 340 S.W.3d at 94.

## A. CR 60.02(a)

Karen argued in her CR 60.02 motion and on appeal that the parties mistakenly failed to include the word "net" when referring to the $130,000 she was to receive from Rodrigo's 401(k). Essentially, she argues the mistake is evident from the four corners of the agreement, and the terms themselves are proof that the mistake renders the MSA unconscionable.

In its ruling, the circuit court referenced several provisions of the MSA concerning different waivers and admissions made by the parties, including acknowledgements that the parties agreed the MSA was fully understood; that the MSA was fair, equitable, and conscionable; and that the parties had an adequate

-6-

opportunity to consult with counsel and/or a tax expert. (R. at 248-58.) The circuit court found there was no indication of the alleged agreement for Karen to solely use the funds to be received from the 401(k) to pay off the debt on the Brownsboro property, nor was the precise balance of the debt contained within the four corners of the MSA. It further found the MSA was drafted by both of the parties' attorneys and that: "[i]t is clear [Karen] chose not to obtain information as to the taxes and fees associated with the withdrawal of retirement funds prior to signing the agreement and knowingly waived her right to do so. This was a decision by [Karen], not a mistake, and is assignable to [Karen's] actions or non-actions." (R. at 351-53.)

We agree with the circuit court that Karen failed to meet her burden of submitting proof that the MSA was entered into as the result of "mistake, inadvertence, surprise or excusable neglect[.]" CR 60.02. Karen likewise did not show that the MSA was patently unfair, unreasonable, or inconsistent with the parties' individual situations. *See, e.g.*, *Jolly v. Jolly*, 698 S.W.3d 427, 431 (Ky. App. 2024). Based upon the evidence before it, we hold that the circuit court's factual findings were not clearly erroneous and it did not abuse its discretion in making those findings.

## B. CR 60.02(f)

To succeed on an application for relief under CR 60.02(f), a moving party must present a "reason of an extraordinary nature justifying relief." "This type of relief is exceptional, to be granted cautiously, and only upon a very substantial showing of special circumstances that justify such relief." *Jolly*, 698 S.W.3d at 431 (citing *Copas v. Copas*, 359 S.W.3d 471, 476 (Ky. App. 2012)). "What constitutes a reason of extraordinary nature is left to judicial construction." *Commonwealth v. Spaulding*, 991 S.W.2d 651, 655 (Ky. 1999). Three factors influence this judicial construction: (1) whether relief under a different subsection of CR 60.02 is available or applicable; (2) "whether the moving party had a fair opportunity to present his [or her] claim at the trial on the merits[;]" and, (3) "whether the granting of CR 60.02(f) relief would be inequitable to other parties." *See Snodgrass v. Snodgrass*, 297 S.W.3d 878, 884 (Ky. App. 2009) (citations omitted). As mentioned above, we have held that CR 60.02(a) does not apply in this instance. Furthermore, Karen does not dispute that she was given a fair opportunity to present her claim before the circuit court. Thus, we turn to the final *Snodgrass* factor.

Karen argues that it is patently unfair and inequitable to enforce the MSA because Rodrigo failed to adequately disclose the nature of the 401(k) before

the parties signed the MSA, namely that the $130,000 interest to be transferred to her was in a "high risk" account. We are not persuaded by this argument.

This argument was first asserted in Karen's subsequent CR 59.05 motion and only supported by her own affidavit. (R. at 355.) In the affidavit, she suggests that Rodrigo misrepresented, or otherwise failed to disclose, the nature of the 401(k), but does not provide evidence to support this claim, other than Rodrigo not supplying account statements of the 401(k) during discovery, which Rodrigo claims were not in his possession. (R. at 361, 365.)

On the other hand, substantial evidence exists supporting the circuit court's finding that Karen chose not to obtain more information about the 401(k). The MSA states that the parties acknowledged the division was based on a full disclosure of all the assets. Additionally, in her affidavit, Karen states that a subpoena she submitted to the managing company of the 401(k) went unanswered, but the affidavit does not indicate that she ever attempted to move to compel compliance with the subpoena. (R. at 361.) Finally, we note that Karen did not contest the entry of the QDRO, which clearly stated that her interest shall be $130,000 and that she will be required to pay the appropriate taxes and penalties on distribution.

The circuit court also found that granting Karen's motion would be inequitable to Rodrigo "by making him responsible for [Karen's] decision not to

seek additional relevant information prior to signing the agreement." (R. at 354.) Granting Karen's motion would divest Rodrigo of at least $20,000, and potentially impose additional fees relating to the execution of a new QDRO or administration of the 401(k).

Both parties were represented by counsel at the time of the mediation. From the four corners of the MSA, both parties were awarded significant assets. Though the values of the assets were not included, other than the $130,000 interest to be awarded to Karen from the 401(k), the parties indicated several times throughout the MSA that they were entering into the contract willingly and fully understood the terms of the MSA. Had the parties intended for the proceeds from Rodrigo's 401(k) to be used for the sole purpose of extinguishing the Brownsboro property debt, precise language could have been utilized indicating such or delineating the exact amounts of the debt and the taxes and fees which were to be deducted from the amount to be withdrawn. Instead, the MSA gave Karen the discretion to use whatever funds were available, whether received from the 401(k) or otherwise, to pay the debt.

We view any remaining contentions of error as moot or without merit.

<u>CONCLUSION</u>

Accordingly, the circuit court's Order of October 4, 2023, is affirmed.

-10-

ALL CONCUR.


BRIEFS FOR APPELLANT:

Allison Spencer Russell
Louisville, Kentucky

BRIEF FOR APPELLEE:

M. Thomas Underwood
Louisville, Kentucky